Affirmed and Memorandum Opinion filed August 30, 2007








Affirmed and Memorandum Opinion filed August 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00801-CV

____________

 

BOSTON MEDICAL GROUP, INC., Appellant

 

V.

 

MARK ELLIS, Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 03-48498

 



 

M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the trial court=s order denying
the special appearance of a nonresident corporation.  We affirm. 

I.  Factual and Procedural
Background








Appellee Mark Ellis, a Texas resident brought suit against
Boston Medical GroupBTexas, P.A., a Texas corporation (ABoston MedicalBTexas@), Dr. Jacques
Roy, M.D. (ADr. Roy@), a Texas
resident, and Boston Medical Group, Inc. (ABoston Medical,
Inc.@), a California
corporation, to recover damages allegedly sustained as a result of medical
malpractice.  Ellis claims that he suffered permanent injury as a result of the
defendants= negligent care and treatment of a sexual
dysfunction.  

Ellis went to Boston MedicalBTexas to seek
medical treatment of a sexual dysfunction.  Dr. Roy examined Ellis and
diagnosed him with decreased erectile function secondary to decreased blood
flow.  On July 16, 2003, Dr. Roy prescribed medication that Ellis was to inject
into his penis when he desired to achieve an erection.  Ellis contends that he
was provided with literature that was misleading and enticed him to purchase
medication sold by the defendants.  Ellis purchased the medication, and
performed this selfBinjection on July 19, 2003.  Two days
later, on July 21, 2003, Ellis continued to have an erection, so he returned to
see Dr. Roy.  Dr. Roy attempted to decompress the erection for approximately
ten hours, and when these attempts were unsuccessful, he instructed Ellis to
check into a nearby hotel.  After several hours without change, Dr. Roy
instructed Ellis to go to the emergency room at Memorial Hermann Hospital,
where he underwent surgical decompression.  This surgery left Ellis impotent.

Ellis brought suit against Boston Medical-Texas, Boston
Medical, Inc. and Dr. Roy. He claims Boston Medical, Inc. is liable for actual
and punitive damages based on the alleged negligence, gross negligence, and
malice of its agents and employees.  After being sued, Boston MedicalBTexas and Dr. Roy
entered general appearances and did not challenge the personal jurisdiction of
the trial court over them.  However, Boston Medical, Inc. filed a special
appearance alleging that the trial court lacked personal jurisdiction over it
because there was no specific or general jurisdiction.  After a hearing, the
trial court denied Boston Medical, Inc.=s special
appearance.  In this interlocutory appeal, Boston Medical, Inc. challenges the
trial court=s jurisdictional ruling. 

 








II.  Standard of Review

Whether Boston Medical, Inc.  is subject to personal
jurisdiction in Texas is a question of law subject to de novo review.   See
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  
The trial court did not issue any findings of fact or conclusions of law.
Therefore, all facts necessary to support the trial court=s ruling and
supported by the evidence are implied in favor of the trial court=s decision.  Id.
at 795.  Parties may challenge the legal and factual sufficiency of these
implied factual findings.  Id.  In conducting a no‑evidence
analysis, we review the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.  2005).  We must credit
favorable evidence if a reasonable factfinder could and disregard contrary
evidence unless a reasonable factfinder could not.  See id. at
827.  We must determine whether the evidence at trial would enable reasonable
and fair‑minded people to find the facts at issue.  See id.  The
factfinder is the sole judge of the credibility of the witnesses and the weight
of their testimony.  See id. at 819.








When reviewing a challenge to the factual sufficiency of
the evidence, we examine the entire record, considering both the evidence in
favor of, and contrary to, the challenged finding.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  After considering and weighing all the evidence,
we set aside the fact finding only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given to their
testimony.  GTE Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  We may not substitute our own judgment for that of
the trier of fact, even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  GTE Mobilnet, 61 S.W.3d at 616.

III.  Issues and Analysis 

In two issues, Boston Medical, Inc. challenges the trial
court=s implied findings
of specific and general jurisdiction, and its denial of the special
appearance.  More specifically, Boston Medical, Inc. contends the evidence is
legally and factually insufficient  to support the trial court=s order denying
its special appearance.  Thus, the main issue before this court is whether the
evidence is legally and factually sufficient to support the trial court=s implied findings
of jurisdiction.

The Texas long‑arm statute governs Texas courts= exercise of
jurisdiction over nonresident defendants. Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon Supp.
2005).  It allows courts to exercise personal jurisdiction as far as the
federal constitutional requirements of due process will permit.  See BMC
Software, 83 S.W.3d at 795.  We rely on precedent from the United States
Supreme Court and from other federal courts, as well as Texas decisions, in
determining whether a nonresident defendant has shown that the exercise of
personal jurisdiction violates federal due process guarantees.  Id.








Personal jurisdiction over a nonresident defendant is
constitutional when two conditions are met: (1) the defendant has established
minimum contacts with the forum state, and (2) the exercise of personal
jurisdiction comports with traditional notions of fair play and substantial
justice.  Id.  A nonresident defendant that purposefully has availed
itself of the privileges and benefits of conducting business in Texas has
sufficient contacts to allow Texas courts to exercise personal jurisdiction
over the nonresident.  Id.  Although not determinative, foreseeability
is an important consideration in deciding whether the nonresident defendant purposefully
has established minimum contacts with Texas.  Id.  The concept of
foreseeability is implicit in the requirement that there be a substantial
connection between the defendants and Texas arising from their conduct
purposefully directed toward Texas.   See Guardian Royal Exch. Assur., Ltd.
v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).  A
defendant should not be subject to a Texas court=s jurisdiction
based upon random, fortuitous, or attenuated contacts.  BMC Software, 83
S.W.3d at 795.

Specific jurisdiction exists when the claims in question
arise from or relate to the defendant=s purposeful
contacts with Texas.  Am. Type Culture Collection Inc. v. Coleman, 83
S.W.3d 801, 807 (Tex. 2002).  In conducting a specific‑jurisdiction
analysis, we focus on the relationship among the defendants, Texas, and the
litigation.  See Guardian Royal, 815 S.W.2d at 228. For a nonresident
defendant=s forum contacts to support an exercise of specific
jurisdiction, there must be a substantial connection between those contacts and
the operative facts of the litigation.  See Moki Mac River Expeditions v.
Drugg, 221 S.W.3d 569, 585 (Tex. 2007).  General jurisdiction, however,
implicates a more demanding minimum‑contacts analysis, requiring a
showing that the defendants conducted substantial activities within the forum. 
CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996) (orig. proceeding).
General jurisdiction exists when a defendant has Acontinuous and
systematic general business contacts@ with Texas so
that Texas courts may exercise personal jurisdiction over the defendant even if
the plaintiff=s claims did not arise from or relate to the defendant=s activities purposefully
directed to Texas.  See Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408, 414B16, 104 S.Ct. 1868, 1872B73, 80 L.Ed.2d 404
(1984); Am. Type Culture Collection, 83 S.W.3d at 809B10.  Boston
Medical, Inc. argues that it is not subject to specific or general
jurisdiction. 








Boston Medical, Inc. asserts the trial court erred by
denying its special appearance because: (1) references to ABoston Medical
Group@ in documents and
at the depositions do not support jurisdiction over Boston Medical, Inc.
because there is no evidence that these entities are the same; (2) this action
does not arise out of or relate to any contacts between Boston Medical, Inc.
and Texas necessary to show specific jurisdiction; and (3) Boston Medical, Inc.
lacks the substantial contacts with Texas necessary to support general
jurisdiction.[1] 
In response, Ellis contends that Boston Medical, Inc.=s activities were
purposefully directed at Texas, both as a corporate entity, and through its
agents and employees. 

The plaintiff bears the initial burden of pleading
sufficient allegations to bring nonresident defendants within the provisions of
the Texas long-arm statute. See Am. Type Culture Collection, 83 S.W.3d
at 807.  This minimal pleading requirement is satisfied by an allegation that
the nonresident defendants are doing business in Texas.   See Perna v. Hogan,
162 S.W.3d 648, 652B53 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Because Ellis pleaded in his petition that Boston
Medical, Inc. conducted business in Texas and committed torts in Texas, both as
a corporate entity and through its agents, Ellis satisfied his pleading
requirement.  Therefore,  the burden shifted to Boston Medical, Inc. to negate
all bases of personal jurisdiction raised by Ellis=s allegations.  See
Moki Mac River Expeditions, 221 S.W.3d at 574.

 A.     Boston
Medical, Inc. failed to negate all bases of jurisdiction. 

Ellis asserts, among
other things, that Dr. Roy was negligent while providing medical treatment to
Ellis in Texas and that his negligence  proximately caused Ellis=s  damages.  In his live pleading,
Ellis alleges the following:

(1)     Each of the physicians,
nurses, nurses aides, physical therapist[s], and technicians involved in Mark
Ellis= care was either an employee or
apparent and/or ostensible agent of Boston Medical Group, Inc. at the time the
cause of action occurred, and therefore Boston Medical Group, Inc. is liable
for their negligence and malice. 








(2)     Boston Medical Group, Inc. is
independently through its agents and employees and through its failure to
implement proper policies and procedures and adequately train or make certain
that its physicians, nurses, and nurses aides were trained in the diagnosis and
treatment of erectile dysfunction. 

(3)     Boston Medical Group, Inc. supplied Mark
Ellis with misleading documentation stating that the intracavernosal injections
were curative in the majority of their patients and the literature concerning
alternate treatments was slanted in a negative way to persuade Mark Ellis to
agree to purchase the injectable medication from Boston Medical Group, Inc.
instead of choosing a safer alternative oral medication.

(4)     Boston Medical Group, Inc. owed a duty to
Mark Ellis that he be examined by a physician expert in erectile dysfunction
who would perform a thorough evaluation and offer him the safest alternative
treatments.  Boston Medical Group, Inc. also owed Mark Ellis a duty to supply
him with fair and balanced information concerning erectile dysfunction and the
various treatment options.

 

(emphasis
added). Two of the individuals who allegedly treated and counseled Ellis in
Texas were Robert HickmanBthe medical advisor, and Dr. Jacques RoyBEllis=s treating
physician.   Ellis contends that Boston Medical, Inc. failed to negate his
allegation that Dr. Roy and the other individuals tho treated him in Texas are
agents of Boston Medical, Inc.  The Texas contacts of agents or employees are
attributable to their nonresident principals.  See Alenia Spazio, S.p.A. v.
Reid, 130 S.W.3d 201, 214 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  








In its special appearance, and through its evidence, Boston
Medical, Inc. failed to challenge Ellis=s assertion that
Boston Medical, Inc. maintained agents or employees in Texas.  More
specifically, Boston Medical, Inc. failed to negate that Dr. RoyCthe treating
physicianCwas not its agent or employee.[2] 
Because Boston Medical, Inc. failed to negate this jurisdictional fact, we
conclude that Boston Medical, Inc. failed to negate all bases for jurisdiction
alleged by Ellis.  Therefore, on this basis alone, the trial court did not err
in denying Boston Medical, Inc.=s special appearance.  However, even if
Boston Medical, Inc. had negated Ellis=s jurisdictional
claim of agency, the record contains other legally and factually sufficient
evidence to support the trial court=s implied findings
in support of specific jurisdiction.  

B.      The
evidence is legally and factually sufficient to support the trial court=s implied findings
in  support of specific jurisdiction. 

For a Texas court to properly exercise specific
jurisdiction in this case, (1) the claims in question must arise from or relate
to Boston Medical, Inc.=s purposeful contacts with Texas; and (2)
there must be a substantial connection between those contacts and the operative
facts of the litigation.  See Moki Mac, 221 S.W.3d at 576, 585.    








Ellis points to the depositions of Robert Hickman and Dr.
Roy as well as the verification of Thomas Messigner, Boston Medical, Inc.=s agent for
service of process, and several documents which bear the name ABoston Medical
Group, Inc.@   In his deposition, Hickman testified that he sought
employment with ABoston Medical Group@[3]  when he came
across an internet listing.  Hickman submitted his resume, and soon thereafter
was contacted by a woman named AMaribelle@ who was located
in the Human Resources Department in the Cosa Mesa, California office.[4]  
Hickman stated that an interview was set up, and Dr. Daniel Ha, the president
of the entire ABoston Medical Group@ came to Houston,
Texas,  to interview him.  After Hickman was hired, the clinical manager,
Michael Moss came from California to train him in Houston.  Hickman stated that
Moss remained in Houston for approximately two weeks.  Hickman further stated
that Moss works with Messigner who is the Ageneral manager@ over all of the ABoston Medical
Group.@   

Hickman further testified that his paychecks come from
California, and when he needs to request time off, he calls an office located
in California. Hickman stated that Dr. Ha was one of the individuals who
formulated the prescription that was given to Ellis.  In addition, and most
imperatively, is that several documents produced by Ellis bear the name ABoston Medical
Group, Inc.,@ including the informed consent form Ellis signed on
July 16, 2003,for the medical treatment.   

          In
its supplemental special appearance, Boston Medical, Inc. attempted to refute
Hickman=s deposition
testimony, and the documents that made reference to ABoston Medical
Group, Inc.@ by attaching affidavits of Hickman, Dr. Ha, and
Messigner.  Boston Medical, Inc.=s main contention
is that trial court does not have specific jurisdiction over it because the
claims do not arise from and are not related to any contacts between Boston
Medical, Inc. and Texas, but are the contacts of another company named ABoston Medical
Group.@  Boston Medical,
Inc. asserts the following: 

(1)     There is no evidence that any person
involved in Ellis=s care or treatment was employed by
Boston Medical, Inc.; 

(2)     The evidence is undisputed that Boston
Medical, Inc. does not operate in Texas; 

(3)     Ellis=s injuries do not arise out of any contacts between Boston
Medical Group, Inc. and Texas because Boston Medical, Inc. does not have any
contacts with Texas; 








(4)     Although Ellis may have presented evidence
about a connection between a company that has its headquarters in California,
and the claims made in this case, there is no evidence that the company was
Boston Medical Group, Inc.;

(5)     Although Ellis mentions a few documents that
bear the name of Boston Medical, Inc., Dr. Ha testified that he created
documents with this name before the actual entity existed, and he assumed that
was to be the name of the future entity but that it ultimately was not the
name; and

(6)     Robert Hickman, the medical advisor at
Boston Medical Group in Houston, Texas was not referring to Boston Medical,
Inc. in California when he was asked questions but was referring to a Adifferent entity.@ 

 

In his affidavit, Robert Hickman, states in pertinent part:


!       AI gave a deposition on July 15, 2005, in which I was asked
several questions about >Boston Medical Group= in general and not the specific
entity >Boston Medical Group, Inc.= Likewise, my answers involved >Boston Medical Group= generally and not >Boston Medical Group, Inc.= I was not aware of any corporate
structure or legal names of the different entities at the time of my
deposition.@

!       AI have read Plaintiff=s response to Boston Medical Group, Inc.=s Special Appearance.  Plaintiff=s counsel incorrectly references my
deposition several times as evidence of Boston Medical Group, Inc.=s involvement in Texas. For
instance, the response states >Mr. Hickman sought employment with BMG, Inc. [Boston Medical
Group,Inc.] when he came across an internet employment listing.= As you can see from the question
in the deposition and my response, I was asked about >Boston Medical Group= generally and not >Boston Medical Group, Inc.=  I did not seek employment with >Boston Medical Group, Inc.=@

!       AThe response also cites my deposition as evidence that
Maribelle is the human resources person at Boston Medical Group, Inc. Again, I
was asked about >Boston Medical Group= in general. I do not know if
Maribelle is affiliated with >Boston Medical Group, Inc.=@ 








!       AThe response also cites my deposition as evidence that Dr.
Ha is president of >Boston Medical Group, Inc.= However, I only stated that Dr. Ha
was president of >Boston Medical Group= generally and not >Boston Medical Group, Inc.= Also, my statement regarding Dr.
Ha was more or less a guess, and by no means did I mean to imply an affiliation
between Dr. Ha and >Boston Medical Group, Inc.=  Dr. Ha has a better understanding
of his involvement, if any, than I do.@

!       AThe response also cites my deposition as evidence that Tom
Messigner is the general manager over all of the >Boston Medical Group.  Again, I did not know the
differences between the entities. I only referred to >Boston Medical Group= generally in my responses. I did
not state >Boston Medical Group, Inc.= nor did I intend it infer it
[sic].  My statement regarding Tom Messigner was more or less a guess, and by
no means did I mean to imply an affiliation between Tom Messigner and >Boston Medical Group, Inc.= Tom Messigner has a better
understanding of his involvement, if any, than I do.@

!       AThe response also cites my deposition as evidence that my
paychecks come from Boston Medical Group in California.  After reviewing my
check, I see that I was mistaken.  My checks do come from California, but >Boston Medical Group, Inc.= and >Boston Medical Group= do not appear anywhwere on my direct deposit
check.  A different entity is named.  In short, I am not paid by >Boston Medical Group, Inc.=@

!       AThe response also cites my deposition as evidence that I
call headquarters in California to get time off.  While it is true that I call
California, I do not know the name of the entity that is called. My statement
regarding headquarters in California was more or less a guess, and by no means
did I mean to imply >Boston Medical Group, Inc.= Further Plaintiff=s counsel even asked me if I
understood that there could be headquarters in Florida, to which I responded
that there could be, but I never deal with them.@

!       AThe response also
cites my deposition as evidence that the information given to patients comes
from headquarters in California.  While it is true that the information came
from California, I do not know the name of the entity that provides it. Again,
my statement regarding headquarters in California was more or less a guess, and
by no means did I mean to imply >Boston Medical
Group, Inc.=. . . @








Thomas Messigner verified the following allegations in
Boston Medical, Inc.=s special appearance:

!       Plaintiff=s First Amended Petition acknowledges that Boston Medical,
Inc. is  a foreign corporation with its office and registered agent located in
Costa Mesa, California; 

!       Boston Medical, Inc. is a California
corporation with its principal place of business in Costa Mesa, California; 

!       Boston Medical, Inc. does not have any
ownership interest in any clinic in Texas; 

!       Boston Medical, Inc. does not and has not had
a place of business in Texas; 

!       Boston Medical, Inc. does not maintain a
registered agent in Texas; 

!       Boston Medical, Inc. does not have an office
in Texas; 

!       Boston Medical, Inc. does not lease any
property in Texas; 

!       Boston Medical Inc. does not lease any
property outside of Texas for use within the state of Texas; 

!       Boston Medical, Inc. does not own any
personal property located in Texas; 

!       Boston Medical, Inc. does not have a
telephone listing in Texas; and

!       Boston Medical, Inc. does not do any
marketing in of Texas. 

 

In his affidavit attached to the supplemental special
appearance, Messigner further stated that his only affiliation with ABoston Medical
Group, Inc.@ in California  is that [he is] its registered agent. 
He also states that although he is not employed by Boston Medical, Inc., he has
personal knowledge that Michael Moss and Maribelle Flores are not employed
by Boston Medical, Inc.  Finally, in reference to the several documents that
bear the name ABoston Medical Group, Inc.,@ including the
informed consent form Ellis signed, Boston Medical, Inc. offered Dr. Ha=s affidavit as an
explanation.  In his affidavit, Dr. Ha states: 








AI created certain handouts that bear the name >Boston Medical Group, Inc.= At the time[] I prepared these
documents, that entity did not exist, and I assumed that >Boston Medical Group, Inc.= would end up being the name of the
corporation for which I was preparing the documents.   However, the name ABoston Medical Group, Inc.= was not used for that entity. 
Unfortunately, when I revised the documents, I did not go back to change the
name for the appropriate entity.@

 

In his affidavit, Hickman stated that he is not paid by
Boston Medical Group, Inc.; however, he failed to reveal the name of the entity
in California that actually does compensate him for his services.  Although
Hickman=s affidavit
contradicts his deposition, the trial court, as the sole judge of the
credibility of the witness, could have determined that Hickman meant ABoston Medical
Group, Inc.@ when making reference to  ABoston Medical
Group@ generally during
his deposition. See Huynh, 180 S.W.3d at 620; Puri v. Mansukhani, 973
S.W.2d 701, 710B711 (Tex. App.CHouston [14th
Dist.] 1998, no pet.) (refusing to comply with appellee=s request to
reevaluate appellee=s credibility as the trial court is the
sole judge of credibility and resolves all conflicts in the special appearance
evidence).  In this case, the trial court impliedly resolved all conflicts in
the evidence against Boston Medical, Inc., and in favor of Ellis by denying the
special appearance.  








Moreover, in reviewing Dr. Ha=s affidavit, the
trial court could have discounted his explanation of why certain documents,
including Ellis=s consent form, bear the name ABoston Medical
Group, Inc.@   Although Dr. Ha specifically stated that ABoston Medical
Group, Inc.@ was not the actual name, he (like Hickman) also
failed to reveal the name of the  entity that he claims should have been used. 
Finally, as to Maribelle Flores (the individual in the Human Resources
Department in the Cosa Mesa office who contacted Hickman for an interview) and
Michael Moss (the clinical manager who came from California to train Hickman),
the trial court could have found impliedly that these individuals were
connected to the ABoston Medical Group, Inc.@ office in Cosa
Mesa, California despite Messigner=s affidavit. 
Likewise, the trial court could have concluded that Messigner lacks credibility. 
See Tex. R. Civ. P.  120a(3);
see also Navasota Res., Ltd. v. Heep Petroleum, Inc., 212 S.W.3d 463,
469 (Tex. App.CAustin 2006, no pet.) (refusing to disturb the trial
court=s resolution of
evidentiary conflicts and issues of credibility in special appearance context);
Ennis v. Loiseau, 164 S.W.3d 698, 704 (Tex. App.CAustin 2005, no
pet.) (concluding that statements by corporate defendant=s president in
special appearance affidavits could be excluded as conclusory in determining
personal jurisdiction); Wright v. Sage Eng'g, Inc., 137 S.W.3d 238, 250
n. 8 (Tex. App.CHouston [1st Dist.] 2004, pet. denied)
(stating that special appearance affidavits must be Adirect,
unmistakable, and unequivocal as to the facts sworn to.@).  Although he
states that he is not employed by ABoston Medical
Group, Inc.@and has no connection with that entity other than
being its registered agent, he claims to have personal knowledge that
Moss and Flores neither work for nor are they employed by ABoston Medical
Group, Inc.@  To avoid being deemed conclusory, an affidavit must
contain specific factual bases upon which the stated conclusions are drawn. 
Nichols v. Lightle, 153 S.W.3d 563, 570 (Tex. App.CAmarillo 2004,
pet. denied).  Messigner does not explain how he has such personal knowledge of
Moss=s and Flores=s lack of
employment with Boston Medical Group, Inc.  The trial court could have found
that Messigner himself does  not work for the company and does not know who
does or does not work for Boston Medical Group, Inc.  See Humphreys v.
Caldwell, 888 S.W.2d 469, 470 (Tex. 1994) (stating that A[m]erely reciting
that an affidavit is made on personal knowledge is insufficient.@); Urban v.
Barker, No. 14-06-00387-CV, 2007 WL 665118, at *2B3  (Tex. App.CHouston [14 Dist.]
Mar. 06, 2007, no pet.) (mem. op.) (finding affidavit in support of special
appearance insufficient under Rule 120a(3) where affidavit revealed no facts on
how affiant acquired personal knowledge as to the statements made in her
affidavit).








In conducting a legal-sufficiency review,
we must credit favorable evidence if a reasonable factfinder could, and
disregard contrary evidence unless a reasonable factfinder could not.  Wilson,
168 S.W.2d at 822.  In reviewing a factual-sufficiency challenge, we may not
substitute our own judgment for that of the trier of fact, even if we would
reach a different answer on the evidence.   Maritime Overseas, 971
S.W.2d at 407.  Therefore, applying the applicable standards of review, we
conclude that the evidence is legally and factually sufficient to support the
trial court=s implied finding that Boston Medical, Inc. was the
entity to which Hickman referred in his deposition, and that (1) the claims in
question arise from or relate to Boston Medical, Inc.=s purposeful
contacts with Texas; and (2) there is a substantial connection between these
contacts and the operative facts of this litigation.  See Moki Mac, 221
S.W.3d at 576, 585.  Accordingly, we overrule both of Boston Medical, Inc.=s issues on
appeal, and we affirm the trial court=s order denying
Boston Medical, Inc.=s special appearance.

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Judgment
rendered and Memorandum Opinion filed August 30, 2007.

Panel
consists of Justices Frost, Seymore, and Guzman. 

 

 

 

 

 

 

 









[1]   On appeal, Boston Medical, Inc. has not argued that
the trial court=s exercise of personal jurisdiction over it would
violate traditional notions of fair play and substantial justice -B the second prong in the jurisdictional analysis.  See
Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990).  Thus, we do not
address this prong in this opinion. 





[2]  We note that as to Robert Hickman, Boston Medical,
Inc. attached an affidavit to its supplemental special appearance attempting to
show that Hickman was not affiliated with ABoston
Medical Group, Inc.,@ but rather was affiliated with some other unnamed
entity that is generally known as ABoston
Medical Group.@  Therefore, we conclude that, to this extent, Boston
Medical, Inc. produced evidence to negate Hickman=s agency status, placing the burden back on Ellis.  We discuss Hickman=s status with ABoston
Medical Group, Inc.@ in further detail below. 





[3]  As noted below, Hickman disputes (in an affidavit)
that this is the same entity as ABoston
Medical Group, Inc.@  However, the trial court, as the finder of fact and
judge of the credibility of the witnesses, could have disregarded Hickman=s affidavit and made the implied finding that Hickman
was indeed connected to ABoston Medical Group, Inc.@ as an employee or agent, and not with some other ABoston Medical Group@ entity that he failed to identify by name. See Huynh, 180
S.W.3d at 620.





[4]  Notably, Boston Medical Group, Inc.=s principal place of business is also in Cosa Mesa,
California.