Ex rel Tim **TEAL, Commissioner Precinct 1, McMullen County, Texas, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–07–00057–CV.**

Court of Appeals of Texas, San Antonio.

June 27, 2007.

Rehearing Overruled July 12, 2007.

---

D. Jennings Bryant, La Porte, Timothy A. Hootman, Houston, for appellant.

Roberto S. Vargas, San Antonio, Robert T. Bass, Allison, Bass & Associates, L.L.P., Austin, for appellee.

Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a judgment removing Tim Teal from the office of County Commissioner, Precinct 1, in McMullen County, Texas, on the grounds of official misconduct and incompetency. We affirm.

## BACKGROUND

Teal lives on a ranch he owns in McMullen County located a few miles from the county seat of Tilden, Texas. Teal was first elected Commissioner for Precinct 1 of McMullen County following the November 2000 elections. In September 2006, a petition for removal was filed against Teal. The removal petition was signed and verified by Bruce Thomas, Sheriff of McMullen County, and endorsed by Roberto Vargas, County Attorney for McMullen County. The removal petition alleged Teal committed "official misconduct" by "(a) using county funds to refurbish for his own use a sprayer owned by him," "(b) using county funds to purchase chemical ... for his own use," and "(c) using county funds to purchase a barn fan for his own use."[2] The petition further alleged Teal acted with "incompetence" by "(a) using county funds to refurbish for his own use a sprayer owned by him," "(b) using county funds to purchase chemical ... for his own use," "(c) using county funds to purchase a barn fan for his own use," and "(d) arranging a trade-out of rock for the benefit of Brandon Seidel and not the county."[3]

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT TEAL'S REMOVAL FROM OFFICE

■ A county commissioner may be removed from office for any one of three

2. The jury found "true" to only (a).

3. The jury found "true" to (a) and (b)

reasons: incompetency, official misconduct, or intoxication on or off duty caused by drinking an alcoholic beverage. TEX. LOC. GOV'T CODE ANN. § 87.013(a) (Vernon 1999). The Texas Local Government Code defines "incompetency," in part, as "gross ignorance of official duties" or "gross carelessness in the discharge of those duties." *Id.* § 87.011(2). The Code defines "official misconduct" as "intentional, unlawful behavior relating to official duties by an officer entrusted with the administration of justice or the execution of the law. The term includes an intentional or corrupt failure, refusal, or neglect of an officer to perform a duty imposed on the officer by law." *Id.* § 87.011(3). In his second and third issues, Teal asserts the evidence is legally insufficient to support a finding for removal based on official misconduct and incompetency.

At trial, there was no dispute that Teal used county funds to refurbish a spray rig used to spray chemicals to control brush along the sides of roads and in pastures. There is no dispute the rig was privately owned by Teal. The dispute centered on whether Teal donated the rig to the county. According to Teal, he intended to donate the rig to the county; therefore, use of county funds to refurbish it did not amount to official misconduct or incompetency.

Teal testified he first approached Paul Koonce, County Commissioner for Precinct 3, about the county acquiring a spray rig. Teal said he told Koonce he had an old tank that he could "fix up" for the county, and he asked Koonce if the county could use a spray rig. Koonce recalled the conversation in a slightly different light. He testified Teal asked him if he would be interested "in using a sprayer that he [Teal] was going to have built." Koonce admitted he responded that he could use such a sprayer on his county roads; how-ever, Koonce denied that Teal told him he already owned a spray rig that he intended to repair. Instead, Koonce was under the impression Teal was having a rig newly built.

Koonce also testified Teal never mentioned his intention, before expending any county funds, to donate the spray rig to the county or to use county funds to repair his privately-owned spray rig. Koonce said Teal mentioned donating the rig to the county *after* the county officials started questioning invoices for expenditures on the rig. However, in Teal's mind, his intent to donate occurred upon his first conversation with Koonce. Teal said that "[o]nce [he] talked to Paul Koonce [he] figured in [his] head that was when it was donated." In his mind, title transferred at the point in time he and Koonce spoke. Teal admitted the only conversation he had with the commissioners' court as a whole was when the county's accountant asked about certain invoices presented to the county for payment.

Rusty Williams, who is the McMullen County accountant, testified that invoices for expenditures in each precinct are presented to the commissioner for that precinct at commissioners' court meetings. At a court meeting in June 2005, an invoice was inadvertently included amongst Precinct 2 invoices. When the Precinct 2 Commissioner rejected the invoice as not representing an expenditure for his precinct, Teal claimed the invoice as one of his precinct expenditures. When Williams asked about the purpose of the expenditure, Teal responded, "I'm building a spray rig." Williams said he thought Teal had purchased a tank and parts to build the rig, and it was not until July 2005 that he discovered the rig was not new. Teal admitted he did not tell the court he intended to donate the rig to the county at the June 2005 meeting. Both Koonce and Williams

testified donations made to the county had to be approved by the full commissioners' court.[4]

We conclude the above evidence is legally sufficient to support the jury's finding of either "gross ignorance of official duties" or "gross carelessness in the discharge of those duties." By his own admission, Teal spent county funds to refurbish his privately-owned spray rig. He did not formally present his idea to donate the rig to the county to the full commissioners' court because he did not believe he had an obligation to do so. Teal admitted to telling only one other commissioner about the rig, which he thought was sufficient to effectuate a transfer of title to the rig from him to the county. Because the evidence is sufficient to sustain one of the allegations against Teal, we do not address Teal's assertion that the evidence is legally insufficient to support a finding of official misconduct. *See De Anda v. State*, 131 S.W.3d 198, 203 (Tex.App.-San Antonio 2004, no pet.) (sustaining allegation of any one charge authorizes removal).

## JURISDICTION

■ In his first issue, Teal asserts the trial court lacked jurisdiction to consider the removal proceeding because the petition for removal was not sworn to as required by Local Government Code section 87.015, which provides as follows:

Any resident of this state who has lived for at least six months in the county in which the petition [for removal] is to be filed and who is not currently under indictment in the county may file the petition. *At least one of the parties who files the petition must swear to it at or before the filing.*

4. *See* Tex. Loc. Gov't Code Ann. § 81.032 (Vernon Supp.2006) ("The commissioners court may accept a gift, grant, donation, bequest, or devise of money or other property on behalf

Tex. Loc. Gov't Code Ann. § 87.015(b) (emphasis added).

Teal challenges the following language contained in the petition for removal in his case:

I, Bruce Thomas, do hereby swear and affirm that I am in excess of eighteen years of age, of sound mind, and competent to make this verification. All matters stated herein are, to my personal knowledge, true and correct, based upon my own investigation into the facts of the matters contained in this Petition for Removal.

According to Teal, Thomas's statement, "based upon my own investigation into the facts of the matters contained in this Petition for Removal," renders the affidavit legally invalid because Thomas's statements are not based on his personal knowledge, but rather are based on his "investigation into the facts."

■ An affidavit must positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge; otherwise, the affidavit is legally insufficient. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex.1994). In *Humphreys*, the affiant stated his statements were based on his "own personal knowledge and/or knowledge which he has been able to acquire upon inquiry." *Id.* The Court held the affiant's statements failed "to unequivocally show that they [two affidavits] are based on personal knowledge." The affiant also provided no representation that the facts disclosed were true. *Id.* Therefore, the Court held the affidavits to be legally invalid. *Id.* at 470–71.

of the county for the purpose of performing a function conferred by law on the county or a county officer.").

■ Thomas's affidavit here is distinguishable from that in *Humphreys.* Thomas's affidavit states unequivocally that all matters stated in the petition for removal are, to his personal knowledge, true and correct. Thomas's statement that his knowledge is based upon his own investigation does not render the affidavit invalid. "[A]n affiant's acknowledgment of the sources from which he gathered his knowledge does not violate the personal knowledge requirement." *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d 218, 224 (Tex.2004) (orig.proceeding); *see also Grotjohn Precise Connexiones Int'l, S.A. v. JEM Fin., Inc.,* 12 S.W.3d 859, 866 (Tex.App.-Texarkana 2000, no pet.) (affidavit that referred to a personal investigation of matter contained in affidavit, along with conversations, dealings and meetings, established affiant's personal knowledge). We therefore conclude Thomas's affidavit was sufficient to confer jurisdiction on the trial court.

## DISQUALIFICATION OF ATTORNEY

■ In his fourth issue, Teal argues the trial court erred in denying his motion to disqualify Robert Bass who acted as "Special Counsel Assisting Mr. Vargas." Teal argues that only a county attorney, or an assistant attorney who has been retained pursuant to provisions of the Government Code, may prosecute a removal suit. According to Teal, Bass acted as more than a mere assistant to Vargas because Bass was the lead attorney in every phase of trial, and to the extent Bass merely assisted Vargas, Bass was not retained in compliance with the Government Code.

With exceptions that do not apply here, the "county attorney shall represent the state in a proceeding for the removal of an officer...." TEX. LOC. GOV'T CODE ANN. § 87.018(d). "A prosecuting attorney may employ the assistant prosecuting attorneys

... and other office personnel that in his judgment are required for the proper and efficient operation and administration of the office." TEX. GOV'T CODE ANN. § 41.102(a) (Vernon 2004); *see also* TEX. GOV'T CODE ANN. § 41.101 (defining "prosecuting attorney" to include "a county attorney."); *State v. Fischer,* 769 S.W.2d 619, 621–22 (Tex.App.-Corpus Christi 1989, no writ) (interpreting section 41.102 as authorizing a county attorney to appoint a private attorney as attorney pro tem for the sole purpose of prosecuting a specific suit).

■ Here, Bass was not hired as an assistant county attorney; therefore, the Government Code requirements applicable to assistant county attorneys do not apply. *See* TEX. GOV'T CODE ANN. § 45.002 (qualifications and requirement of oath of office). Instead, the McMullen Commissioners' Court retained Bass to assist Vargas in the contemplated litigation against Teal. A commissioners' court, "under its authority to control and manage the finances and business affairs of the county, has power and authority to employ attorneys to assist the regularly constituted officers of the county in the prosecution of its claims and suits." *Adams v. Seagler,* 112 Tex. 583, 250 S.W. 413, 413 (1923); *see also Guynes v. Galveston County,* 861 S.W.2d 861, 864 (Tex.1993) (commissioners' court may exercise its discretion to choose the method of hiring attorneys it deems most beneficial to county residents and taxpayers). However, a commissioners' court may not delegate the county attorney's duties or employ outside attorneys to the exclusion of the county attorney. *Guynes,* 861 S.W.2d at 864. Nothing in the record here indicates Bass usurped the county attorney's duties. Instead, the record supports a finding that Bass assisted the county attorney who appeared at trial. Thus, the trial court did not abuse its discretion in denying Teal's motion to disqualify Bass.

## JURY SELECTION

█ In his fifth issue, Teal complains the trial court erred in striking two prospective jurors for cause. We recognize that " '[t]he necessity to prevent the subtle erosion of the standards of the jury system does not require a showing by appellant of injury.' " *Mann v. Ramirez*, 905 S.W.2d 275, 280 (Tex.App.-San Antonio 1995 writ denied) (citation omitted). However, an appellant must still demonstrate "that the trial which resulted against him was materially unfair." *Lopez v. Foremost Paving, Inc.*, 709 S.W.2d 643, 644 (Tex.1986) (per curiam); *see also Mann*, 905 S.W.2d at 281 (adopting "materially unfair trial" standard). Teal did not file any post-verdict motion alleging, and on appeal he does not allege, that striking the two jurors for cause resulted in a "materially unfair" trial. Also, Teal does not assert those who actually served on the jury were unfit for duty. *See Ford v. State*, 73 S.W.3d 923, 925 (Tex.Crim.App.2002) (holding that erroneous granting of challenge for cause will not result in harm to defendant so long as the jury actually selected was composed of qualified persons, and appellate court presumes jurors are qualified absent some indication in the record to the contrary). In view of Teal's failure to explain if, or even how, the trial was "materially unfair," we do not decide whether the trial court erred in striking two prospective jurors for cause.

## JURY CHARGE

█ In his sixth and seventh issues, Teal complains the jury was not required to answer the ultimate question of whether he should be removed from office.

The jury was instructed, in Question 1, that the removal petition alleged Teal committed "official misconduct" by "(a) using county funds to refurbish for his own use a sprayer owned by him," "(b) using county funds to purchase chemical ... for his own use," and "(c) using county funds to purchase a barn fan for his own use." The jury was further instructed to answer true or false for each allegation, (a) through (c). The jury responded "true" to (a) and "false" to (b) and (c). In Question 2, the jury was instructed that the removal petition alleged Teal acted with "incompetence" by "(a) using county funds to refurbish for his own use a sprayer owned by him," "(b) using county funds to purchase chemical ... for his own use," "(c) using county funds to purchase a barn fan for his own use," and "(d) arranging a trade-out of rock for the benefit of Brandon Seidel and not the county." The jury was further instructed to answer true or false for each allegation, (a) through (d). The jury responded "true" to (a) and (b) and "false" to (c) and (d). Teal argues it was error not to also ask the jury whether he should be removed from office. We disagree.

"In a removal case, the judge may not submit special issues to the jury." *See* Tex. Loc. Gov't Code Ann. § 87.018(c). "Under a proper charge applicable to the facts of the case, the judge shall instruct the jury to find from the evidence whether the grounds for removal alleged in the petition are true." *Id.* "If the petition alleges more than one ground for removal, the jury shall indicate in the verdict which grounds are sustained by the evidence and which are not sustained." *Id.* The jury charge here complied with the requirements of section 87.018(c). There is no statutory requirement that the jury be asked specifically whether the official should be removed from office. The ultimate issues here were Teal's alleged official misconduct and incompetence arising from specifically enumerated acts. Each act alone was sufficient to justify removal. *See Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 626 (Tex.App.-Houston [14th

Dist.] 1994, writ denied). Thus, we conclude Teal's argument is without merit.

## CONCLUSION

On appeal, the State asks this court to suspend Teal from office pending appeal. After the jury returned its verdict, the trial court heard arguments on the State's request that Teal be immediately removed from office. The trial court refused to suspend Teal pending appeal. We see no compelling reason to overturn the trial court's decision in this regard; therefore, we deny the State's request to suspend Teal from office pending further appeal. We overrule Teal's issues on appeal and affirm the trial court's judgment.